# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v.   ) | Docket No. 1:19-cr-00109-NT-1 |
| ) | |
| ANDRE MULLER, ) | |
| ) | |
| Defendant. ) | |

## ORDER ON DEFENDANT ANDRE MULLER'S OMNIBUS MOTION

The Defendant, Andre Muller, has filed an omnibus motion seeking a dozen forms of relief. For the reasons discussed below, the motion is **DENIED**.

## BACKGROUND

On June 12, 2019, a grand jury sitting in this district issued a two-count Indictment alleging that the Defendant, Andre Muller, conspired with his two codefendants—Robert Holland and Hector Munoz—and others "to obstruct, delay and affect commerce and the movement of articles in commerce, namely controlled substances, by robbery." Indictment 1 (ECF No. 3). The Indictment further alleges that the Defendant, Mr. Holland, and Mr. Munoz (the "**Defendants**"), and others, "agreed . . . to steal controlled substances" from a residence in Rangeley, Maine, (the "**Rangeley residence**") and "developed a plan to carry out" this robbery. Indictment 1. The Indictment further alleges that this conspiracy began around July 21, 2016, and continued until around July 28, 2016. Indictment 1. The Indictment also alleges

that on or about July 28, 2016, Mr. Munoz and a coconspirator[1] entered the Rangeley residence, armed with dangerous weapons, with the intent to commit the planned robbery. Indictment 1. This conduct comprises Count One of the Indictment, which charges a Conspiracy to Commit Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a). Count Two of the Indictment charges Mr. Munoz with Attempted Hobbs Act Robbery for attempting the robbery that the Defendant and his coconspirators allegedly planned.

On March 8, 2021, the Defendant filed a motion requesting thirteen particular forms of relief. Def. Andre Muller's Pre-trial Mots. ("**Def.'s First Mot.**") (ECF No. 109). Some of the relief requested was based at least in part on the mistaken notion that portions of the Indictment remained under seal. Def.'s First Mot. 8, 10–12, 20. In response, the Government notified defense counsel that an unredacted copy of the Indictment was available on the docket. Gov't's Resp. to Def.'s Pre-trial Mots. ("**Gov't's First Opp'n**") 3 (ECF No. 115). After a conference of counsel, the Defendant filed a new motion, eliminating all mentions of the redacted indictment. Def. Andre Muller's Pre-trial Mots. ("**Def.'s Mot.**") (ECF No. 120). The Government briefly responded but relies primarily on its initial response. Gov't's Resp. to Def.'s Am. Pre-trial Mots. ("**Gov't's Second Opp'n**") (ECF No. 121).

---

[1] The Government has represented that the unnamed coconspirator who entered the residence with Mr. Munoz was killed during the attempted robbery. Gov't Resp. to Def.'s Pre-trial Mots. 7 n.3 (ECF No. 115).

## DISCUSSION

The Defendant now requests twelve particular forms of relief. I address each in turn.

### I.   Motion to Dismiss the Indictment

Generally, an indictment is sufficient if it tracks the language of the charged statute, so long as that language includes all elements of the offense. *United States v. Savarese*, 686 F.3d 1, 6 (1st Cir. 2012). However, the indictment "must also be accompanied by such a statement of facts and circumstances as to inform the accused of the specific offense with which he is charged." *Id*.

The Defendant contends that the Indictment is deficient because it is "insufficient on its face" and "fails to provide any particulars." Def.'s Mot. 4, 7. While the Indictment is indeed succinct, brevity is not the same as insufficiency. Mr. Muller points to no authority requiring the Government to issue a speaking indictment. *See United States v. Edmond*, 924 F.2d 261, 269 (D.C. Cir. 1991) ("Despite the . . . common use of 'speaking' indictments, the function of a federal indictment is to state concisely the essential facts constituting the offense, not how the government plans to go about proving them."). The Indictment identifies all of the necessary elements of Conspiracy to Commit Hobbs Act Robbery, it identifies when the conspiracy took place, and it identifies the essence of the plan. Count One contains sufficient facts to inform Mr. Muller of the specific offense with which he is charged. The motion to dismiss the Indictment is **DENIED**.

## II. Motion for Bill of Particulars

"Motions for bills of particulars are seldom employed in modern federal practice." *United States v. Sepulveda*, 15 F.3d 1161, 1192 (1st Cir. 1993). A bill of particulars is appropriate when, absent a more detailed specification, the defendant "will be disabled from preparing a defense, caught by unfair surprise at trial, or hampered in seeking the shelter of the Double Jeopardy Clause." *Id.* at 1192–93. Mr. Muller argues that the Indictment "fails to inform" him of "the particulars of [the] conspiracy . . . particularly because the Indictment is wholly silent on Mr. Muller's alleged role in the conspiracy." Def.'s Mot. 7. I disagree. The Indictment spells out an approximately eight-day window in which the conspiracy is alleged to have occurred. It identifies three individuals who allegedly planned the robbery and one who allegedly attempted the robbery. It describes the alleged plan for the robbery. And it provides the details of the alleged robbery attempt, including the purpose of the robbery and the date and general location of the attempt. Contrary to Mr. Muller's contention, the Indictment also alleges his role in the conspiracy—that he was allegedly involved with "develop[ing] a plan to carry out the" robbery. Indictment 1.

To be sure, the Indictment leaves open questions, such as who else may have been involved with the conspiracy among the Defendants. But the existence of questions does not mean that the Defendant is entitled to answers. *See, e.g.*, *United States v. Penagaricano-Soler*, 911 F.2d 833, 840 n.5 (1st Cir. 1990) ("It is settled law that 'the identity of the other members of the conspiracy is not needed, inasmuch as one person can be convicted of conspiring with persons whose names are unknown.'" (quoting *Rogers v. United States*, 340 U.S. 367, 375 (1951)). I understand that Mr.

4

Muller may want additional information from the Government, but that does not mean he is entitled to it. *See United States v. Faucette*, No. 2:13-cr-79-DBH, 2013 WL 3458182, at *1 (D. Me. July 9, 2013) ("The purpose of a bill of particulars is not to provide a defendant with discovery that otherwise would not be discoverable under the criminal rules and *Brady/Giglio*."). The charging document contains enough detail to comport with the law. The motion for a bill of particulars is **DENIED**.

### III.  Motion for Severance

"There is a preference in the federal system for joint trials of defendants who are indicted together" because joint trials "promote efficiency and 'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.' " *Zafiro v. United States*, 506 U.S. 534, 537 (1993) (quoting *Richardson v. Marsh*, 481 U.S. 200, 210 (1987)). Severance of properly joined defendants is thus appropriate "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539. "The risk of prejudice will vary with the facts in each case" but "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Id.*

The Defendant makes two arguments in support of his severance motion. First, he claims that, without a severance, he would suffer "spillover prejudice" because his codefendants are "charged with more serious criminal offense conduct than Mr. Muller . . . at least from a lay person juror's perspective." Def.'s Mot. 10. Assuming that the facts surrounding the alleged robbery attempt are more egregious than those surrounding the alleged planning of the robbery attempt, I still see no risk of spillover

5

prejudice. Mr. Munoz, the codefendant charged with actually attempting to commit the robbery, has already pleaded guilty, and he will not be tried alongside Mr. Muller. Further, the evidence of the robbery attempt will likely be admitted (to the extent allowed under the Federal Rules of Evidence) against both Mr. Muller and Mr. Holland, who have both been charged with conspiracy for their alleged roles in planning the offense. Severance thus would not limit the Government's proof. *See United States v. Sabatino*, 943 F.2d 94, 96 (1st Cir. 1991) ("Although the evidence [the one defendant] cites primarily depicts [her codefendant's] participation in the illegal venture, it was nevertheless admissible against [the first defendant] under a basic tenet of traditional conspiracy theory, namely, that a conspirator is responsible for acts his or her co-conspirators executed during the existence and in furtherance of the conspiracy.").

     Second, the Defendant represents that his defense is antagonistic to those of his codefendants. He claims that because "the Indictment concedes that Mr. Muller never went to the Rangley [sic] home, Mr. Muller's defense is 'antagonistic' to" the defenses of his alleged coconspirators "such that the jury's acceptance of the co-defendant's defense would preclude its acceptance of Mr. Muller's defense." Def.'s Mot. 11. I disagree with Mr. Muller's premise. The Indictment says nothing about whether Mr. Muller went to the Rangeley residence, but assuming that he did not, Mr. Muller fails to explain why a coconspirator who does not participate in the commission of the planned offense necessarily has a mutually antagonistic defense to

6

a coconspirator who does so participate.[2] In addition, as the Government explains, because Mr. Munoz has pleaded guilty, the only remaining codefendant—Robert Holland—appears to be charged with the same conduct as Mr. Muller. Gov't's First Opp'n 7. "Defenses are not antagonistic merely because they are not congruent." *United States v. Floyd*, 740 F.3d 22, 36 (1st Cir. 2014). While mutually antagonistic defenses can justify severance, they are not *per se* prejudicial, *Zafiro*, 506 U.S. at 538, and Mr. Muller has failed to explain how he is being prejudiced here. To the extent that any prejudice might result from Mr. Muller and Mr. Holland being tried together, Mr. Muller is free to propose a limiting instruction for the jury. *See United States v. Boylan*, 898 F.2d 230, 246 (1st Cir. 1990) (describing the district judge's use of "appropriate limiting instructions as to the admissibility of evidence against particular defendants and as to the need to determine guilt on an individual basis"). The motion for severance is **DENIED**.

### IV.     Motions Related to Discovery and Other Requested Relief

Most of the Defendant's remaining motions deal with matters of discovery. He seeks disclosure of information—name, address, social security number, criminal history, and current whereabouts—about "any confidential informants, cooperating co-defendants and unindicted coconspirators upon whom the government has relied." Def.'s Mot. 14. He also seeks all *Brady* and *Giglio* material, and he requests early

---

[2]     The defendant who was charged with attempting to commit the robbery, Mr. Munoz, has already pleaded guilty and has not offered any defense, much less a mutually antagonistic one.

disclosure of the Government's witness list and 404(b) material. Def.'s Mot. 17–18, 20–21.

It is well established that the Government may withhold the identities[3] of informants, *see Roviaro v. United States*, 353 U.S. 53, 59 (1957), and coconspirators, *see Penagaricano-Soler*, 911 F.2d at 840 n.5. Disclosure of an informant is "only proper" where a defendant establishes "concrete circumstances that might justify overriding both the public interest in encouraging the flow of information, and the informant's private interest in his or her own safety." *United States v. Cartagena*, 593 F.3d 104, 113–14 (1st Cir. 2010) (quoting *United States v. Tzannos*, 460 F.3d 128, 139 (1st Cir. 2006)). It is the Defendant's "heavy" burden "to show that disclosure is essential for an adequate defense." *United States v. Mills*, 710 F.3d 5, 14 (1st Cir. 2013). Here, the Defendant offers only that he "cannot adequately prepare his defense" and that this information is "most relevant to the ultimate question of [his] guilt or innocence." Def.s' Mot. 15–16. These general assertions are insufficient to meet the Defendant's heavy burden.

The Government has made clear that to the extent it intends to call any informant or unnamed coconspirator as a witness, it will comply with its disclosure obligations under the Jencks Act. Gov't's First Opp'n 9. The Government also has represented that it "has [disclosed] and will continue to disclose in a timely manner" all *Brady* material. Gov't's First Opp'n 11. The Government contends—and the

---

[3] Since the Government can withhold identities, then, a fortiori, the Government can also withhold the other information the Defendant seeks, such as the identifying information and criminal histories of those individuals.

Defendant does not dispute—that it has provided discovery to the Defendant in three tranches, twice in August 2019 and then again in May 2020 and that it has allowed defense counsel to review redacted Jencks material in January 2020. Gov't's First Opp'n 15. And the Government now represents that it plans to disclose all *Giglio* (and Jencks Act) materials three weeks prior to a firm trial date. Gov't's Second Opp'n 2 n.1. The Government is generally aware from an earlier conference I held that failure to meet its disclosure requirements can result in the exclusion of evidence. The Government is not required to exceed the statutory requirements, although it has agreed to provide early Jencks material. It is also not required to provide its witness list months ahead of trial. As to the timing on Rule 404(b) evidence, the Government acts at its own peril if it does not provide notice of any such evidence that it seeks to offer at trial "so that the defendant has a fair opportunity to meet it." Fed. R. Evid. 404(b)(3)(A).

The Defendant also requests that the Court inspect the grand jury minutes to determine whether they should be provided to him. Def.'s Mot. 16–17. As the Defendant acknowledges, only "proof of a compelling necessity which would, by its nature, outweigh the presumption of secrecy attendant to grand jury proceedings" can overcome the secrecy of the grand jury enshrined in the law. Def.'s Mot. 16–17 (citing *United States v. Procter & Gamble Co.*, 356 U.S. 677 (1958)). Rather than try to meet this burden, the Defendant contends that he should not be required to do so because "the paucity of the allegations contained in the Indictment and the government's decision to withhold the identity of Mr. Muller's co-conspirators and

9

accomplice" prevent him from doing so. Def.'s Mot. 17. The Supreme Court has outlined no such exception for disclosure, *see Douglas Oil Co. of Calif. v. Petrol Stops Nw.*, 441 U.S. 211, 223 (1979) (outlining standard for releasing grand jury transcripts), and, in any event, this claim of inadequate information is suspect, given the discovery that has already been provided to the Defendant. Despite receiving discovery and being allowed to review redacted Jencks material, the Defendant offers nothing to indicate any necessity for the undisclosed grand jury transcripts. I also note that, for the most part, the Jencks Act prohibits the "compel[led] pre-trial disclosure of grand jury minutes." *United States v. Doe*, 455 F.2d 1270, 1274 (1st Cir. 1972).

Next, the Defendant requests an order requiring the Government's preservation of all "rough notes taken as part of its investigation." Def.'s Mot. 19. The Government indicates that it does not object to preserving any such notes that have not yet been destroyed and has pledged to do so. I thus see no reason to intervene in this matter.

The Defendant also seeks a *Petrozziello* ruling in advance of trial with regard to any coconspirator statements that the Government seeks to introduce in its case-in-chief. Def.'s Mot. 21–22; *see generally United States v. Petrozziello*, 548 F.2d 20 (1st Cir. 1977). As with his other requested relief, the Defendant fails to explain the specific need underlying his request. I need not make a *Petrozziello* ruling prior to admitting a coconspirator statement—much less make such a ruling prior to trial—and, indeed, there are reasons for not doing so. *See United States v. Ciresi*, 697 F.3d

19, 25 (1st Cir. 2012). Deferring such a ruling allows me to assess the admissibility of the statement with the benefit of having heard all of the evidence and puts me in the best position to determine whether the predicate facts for admissibility under Federal Rule of Evidence 801(d)(2)(E) are met. *Cf. United States v. Ciampaglia*, 628 F.2d 632, 638 (1st Cir. 1980) (explaining that district court may provisionally admit coconspirator statements and then "make a final Petrozziello determination" "at the close of all the evidence").

Finally, the Defendant seeks an extension of time to file a motion to suppress and he "seeks leave to file additional motions as appropriate." Def.'s Mot. 22. The Government does not object to the latter request, Gov't's First Opp'n 15, and, indeed, if the Defendant has a potentially meritorious motion that he could not have filed prior to the pretrial motion deadline, he would be well within his rights to file such a motion. No such leave of court is necessary. As to the request for an extension of time to file a motion to suppress, the Government contends, without refutation, that it provided discovery to the Defendant in August 2019 and in May 2020 and that defense counsel was permitted to review redacted Jencks material in January 2020. The Defendant has had ample time to file a motion to suppress if he thought it was warranted on the material already provided. If it later comes to light that the Government withheld information material to a motion to suppress, I will address any request for additional time to file a motion to suppress at that time.

## CONCLUSION

For the reasons stated above, the Court **DENIES** the Defendant's omnibus motion.

SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 22nd day of July, 2021.

12