UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>ANDRE MULLER and )<br>ROBERT HOLLAND, )<br>)<br>Defendants. ) | Docket No. 1:19-cr-00109-NT |

ORDER ON THE DEFENDANTS' MOTION TO DISMISS
THE INDICTMENT WITH PREJUDICE

Before me is Defendant Andre Muller's Motion to Dismiss the Indictment with Prejudice (the "**Motion**") (ECF No. 407), which is joined by Defendant Robert Holland. For the reasons stated below, the Motion is **DENIED**.

BACKGROUND

Defendant Muller and Defendant Holland were charged with conspiracy to interfere with commerce by robbery, a violation of the Hobbs Act, 18 U.S.C. § 1951(a). *See* Indictment (ECF No. 3). Jury selection for the trial began in the morning on August 2, 2022 and lasted the full day. Minute Entry (ECF No. 283). The selection process included both a case-specific written juror questionnaire (ECF No. 285) and oral voir dire. At the conclusion of the selection process, I seated a jury of twelve members with four alternates. The trial began the next day, on August 3, 2022, and the evidence concluded on August 9, 2022. Minute Entry ("**Aug. 9 Minute Entry**") 1 (ECF No. 288). At the close of evidence, I dismissed the remaining alternate jurors. At 2:00 p.m. on August 9, 2022, following a brief break during which the alternate

jurors left the courthouse, I committed the case to the jury for deliberation. Aug. 9 Minute Entry.

Just a few minutes after deliberation began, at 2:10 p.m., the jury administrator received a text message from one of the alternate jurors who had been dismissed. The sender was later identified as Juror 13,[1] who had been the only Black member of the jury. The message said:

> Just wanted to let you know that if the jury comes back really quick with a guilty verdict then they stuck to the plan they said they were going to do. I was really one of the only ones who was going to fight it and try to make it fair but since my voice won't be heard then I thought I would let you know there were a couple who was still a little undecided but if I was in those boys shoes I would feel ultimately screwed[.]

Sealed Additional Attachs. Suppl. Mot. for New Trial Ct. Ex. 1—Text ("**Juror 13 Text**") (ECF No. 316-2). Juror 13 then sent a follow-up message: "Not saying that's what's going to happen!! but it was suggested!!" Juror 13 Text.

Upon learning from the jury administrator what had occurred, I immediately called a conference of counsel at which I shared Juror 13's messages. Sealed Tr. of Proceedings ("**Tr. of Aug. 9 Conf. of Counsel**") 2:1–3:14 (ECF No. 335). I told counsel that "[m]y gut is to bring [Juror 13] back" to the courthouse to interview her immediately. Tr. of Aug. 9 Conf. of Counsel 5:22–5:23. At the request of the Government, I then called a brief, fifteen-minute recess to allow counsel—and myself—to research the issue and think about next steps. Tr. of Aug. 9 Conf. of Counsel 5:20–5:22.

---

[1] To protect their privacy, I refer to all jurors by the juror number assigned to them at trial.

We reconvened and the Government spoke first, voicing the opinion that the jury should "be allowed to continue deliberating" and that the Court "could even conduct an examination of the jurors in the event of a guilty verdict." Tr. of Aug. 9 Conf. of Counsel 8:4–8:5, 8:8–8:9. The Government cited *United States v. Zimny*, 846 F.3d 458 (1st Cir. 2017),[2] "for the proposition that the Court has broad discretion in conducting juror misconduct investigations." Tr. of Aug. 9 Conf. of Counsel 6:21–6:24. Counsel for Defendant Muller replied that he "could not disagree with government more." Tr. of Aug. 9 Conf. of Counsel 9:14–9:15. Citing both *Zimny* and a Second Circuit case, *United States v. Rosario*, 111 F.3d 293 (2d Cir. 1997),[3] Defendant Muller's counsel stated, "I think the Court is duty-bound . . . upon having evidence of misconduct to investigate." Tr. of Aug. 9 Conf. of Counsel 9:18–9:20. Although Defendant Muller's counsel agreed that the Court has "very, very broad discretion" to "get to the bottom of what's going on[,]" he maintained that, "waiting, to me, . . . is prejudicial." Tr. of Aug. 9 Conf. of Counsel 9:21–9:23, 11:12. I responded that my understanding was that "inquiry can be made at any time after[ a verdict] and that I'm not sure it makes a whole lot of sense to race forward given that anything that happens here can be undone." Tr. of Aug. 9 Conf. of Counsel 14:2–14:5.

---

[2] In *Zimny*, the First Circuit held that trial courts are "required to conduct some further inquiry once it [is] apprised of" a colorable claim of juror misconduct. *United States v. Zimny*, 846 F.3d 458, 470 (1st Cir. 2017). As is relevant here, however, *Zimny* did not address whether that further inquiry must be conducted immediately when the claim of juror misconduct is raised during deliberations.

[3] *Rosario* mainly concerned a defendant's right to be present during a post-verdict interview of a juror in an investigation of potential juror misconduct. *See United States v. Rosario*, 111 F.3d 293, 297–99 (2d Cir. 1997). The court did note that "a trial judge is vested with very broad discretion to deal with problems that arise in connection with jury deliberations or a juror's fitness to deliberate," but it did not address the question of timing. *Id.* at 299.

Counsel for Defendant Muller asked for another conference later that day, while deliberations were still ongoing, and stated his objection to "the timing" of the Court's intended investigation. Tr. of Aug. 9 Conf. of Counsel 18:20–18:24, 20:14–20:16. Specifically, Defendant Muller's counsel raised the concern that a post-verdict investigation would be hindered by Federal Rule of Evidence 606, which prohibits certain types of juror testimony after a verdict. Tr. of Aug. 9 Conf. of Counsel 14:9–14:21. Defendant Muller's counsel stated his belief that Juror 13's text messages called for a mistrial and that, if I did not do so prior to a verdict and the Defendants were found guilty, that the Defendants would then have to move for a new trial under Rule 33 of the Federal Rules of Criminal Procedure, which "is a different standard and a completely different exercise." *See* Tr. of Aug. 9 Conf. of Counsel 20:16–20:23. If I did not agree to call a mistrial immediately, then Defendant Muller's counsel suggested that I should, "at the very least," suspend deliberations and question the jurors. Tr. of Aug. 9 Conf. of Counsel 20:24–21:9. I explained that I had misgivings about suspending deliberations—"I don't want [the jurors] to, you know, have an opportunity to be influenced by anything else." Tr. of Aug. 9 Conf. of Counsel 26:2–26:3.

Counsel for Defendant Holland stated that he was "in agreement with the Court . . . that at some point we need to explore this in the event of guilty verdicts." Tr. of Aug. 9 Conf. of Counsel 26:17–26:19. But, he continued, "I've talked to my client about it" and "he does not want me to ask for a mistrial at this point." Tr. of Aug. 9 Conf. of Counsel 27:10–27:11. At that, I told all present that I was "going to stay the

4

course"—that is, allow the jury to continue deliberating and investigate Juror 13's text messages in the event of guilty verdicts—and I denied Defendant Muller's motion for a mistrial. Tr. of Aug. 9 Conf. of Counsel 27:12, 28:16–28:20. The jury returned a guilty verdict as to both Defendants later that evening, after over four hours of deliberations. Jury Verdict Form (ECF No. 291); Aug. 9 Minute Entry (stating that the jury returned a verdict at 6:20 p.m.).

Upon my instruction, the jury administrator sought to get in touch with Juror 13 through various channels—including phone calls, text messages, and an email—throughout the evening of August 9th and the morning of August 10th, but all such attempts were unsuccessful. *See* Sealed Tr. of Proceedings ("**Tr. of Aug. 10 Tel. Conf. of Counsel**") 4:2–5:12 (ECF No. 336). Unable to contact Juror 13 through any other means, the jury administrator drove with a Deputy United States Marshal to Juror 13's house to notify her of the Court's desire to meet with her. Sealed Tr. of Proceedings ("**Tr. of Aug. 11 Tel. Conf. of Counsel**") 2:23–3:5 (ECF No. 337). Juror 13 was at her home when the jury administrator and Deputy United States Marshal arrived, and she indicated that she had not received the calls or messages from the jury administrator and agreed to come back to the courthouse to speak with me. Tr. of Aug. 11 Tel. Conf. of Counsel 3:2–3:21.

The parties had previously agreed that I should speak to the juror outside the presence of counsel and the Defendants,[4] Tr. of Aug. 9 Conf. of Counsel 9:21–10:11,

---

[4] Counsel for Defendant Muller suggested that, because Juror 13 might be "less . . . [a]nxious" and thus more forthcoming speaking "one-on-one with the Court and the court reporter," that I should

5

12:1–12:6, 12:15–12:16, Tr. of Aug. 10 Tel. Conf. of Counsel 13:10, 13:20–14:19, and so I conducted an interview with Juror 13 in camera but on the record on August 10, 2022.[5] During the interview, I asked Juror 13 to describe the things she saw or heard that led her to text the jury administrator. Sealed Additional Attachs. Suppl. Mot. for New Trial Attach. No. 1 8/10/2022 Sealed Hearing Tr. ("**Tr. of Juror 13 Interview**") 3:14–3:16 (ECF No. 316-1). Juror 13 related a number of remarks by fellow jurors made during the trial, prior to deliberation. As is relevant here, Juror 13 stated that she remembered that a juror—later identified as Juror 22—turned to Juror 13 in the jury room and said, "No offense by what I'm about to say, but the [Defendants] just look guilty." Tr. of Juror 13 Interview 6:23–6:25.

I spoke with counsel by phone the next day, on August 11, 2022, after counsel had time to review the transcript of my interview with Juror 13. *See* Tr. of Aug. 11 Tel. Conf. of Counsel. All agreed that Juror 13's allegations raised the possibility of juror misconduct and warranted further investigation. Tr. of Aug. 11 Tel. Conf. of Counsel 5:24–6:3, 7:13–8:13, 9:20–11:4. After consulting with counsel, I asked the jury administrator to arrange interviews with the jurors who might have said and/or overheard the comments alleged by Juror 13. Tr. of Aug. 11 Tel. Conf. of Counsel 13:14–20:4. Over the course of the next week, I interviewed eight jurors who had

---

"meet one-on-one, in camera, with the alternate on the record." Tr. of Proceedings ("**Tr. of Aug. 9 Conf. of Counsel**") 10:4–10:11, 12:2–12:3 (ECF No. 335).

[5] I arranged for Juror 13 to speak with a public defender before our interview so she could understand the process. Sealed Tr. of Proceedings ("**Tr. of Aug. 11 Tel. Conf. of Counsel**") 4:1–4:8 (ECF No. 337); Sealed Additional Attachs. Suppl. Mot. for New Trial Attach. No. 1 8/10/2022 Sealed Hearing Tr. ("**Tr. of Juror 13 Interview**") 2:25–3:10 (ECF No. 316-1).

6

served alongside Juror 13. Once again, as agreed to by the parties, the interviews were conducted in camera and on the record and without counsel present. I asked the interviewees an assortment of questions submitted by counsel as well as additional questions I believed to be appropriate based on the direction of conversation. In these interviews, almost every one of Juror 13's allegations were corroborated, at least in part, although many of the jurors offered credible benign explanations for most of the comments.

After the conclusion of these interviews, the Defendants filed a motion styled as a motion for a new trial *and* to dismiss the indictment. Def. Andre Muller's Mot. for a New Trial Pursuant to Fed. R. Cr. P. 33 (ECF No. 315); Def. Andre Muller's Mot. for a New Trial Pursuant to Fed. R. Cr. P. Rule 33 (Suppl.) and Mot. to Dismiss Indictment (ECF No. 326). In early November of 2022, I granted the motion for a new trial, finding that the Defendants had been denied their Sixth Amendment right to an impartial jury. *See* Am. Order on Defs.' Mot. for New Trial 1, 13–17 (ECF No. 350). Insofar as the motion was labeled as a motion to dismiss the indictment, however, I denied it for a failure to develop the argument. *See* Am. Order on Defs.' Mot. for New Trial 1 n.2. The Defendants then appealed my denial of the motion to dismiss the indictment, and the First Circuit dismissed the appeal for lack of appellate jurisdiction. J. of USCA as to Andre Muller, Robert Holland ("**J. of First Cir.**") 2 (ECF No. 395).

Now, with jury selection for the new trial set to begin on April 4, 2023, the Defendants seek to dismiss the indictment. Def. Andre Muller's Mot. to Dismiss the Indictment with Prejudice ("**Mot. to Dismiss Indictment**") 1 (ECF No. 407).

## DISCUSSION

The Defendants argue that my failure, upon receipt of Juror 13's text messages, to immediately suspend jury deliberations, initiate an investigation, and attempt to remediate any potential jury taint constituted a violation their Sixth Amendment right to an impartial jury[6] and their Fifth Amendment right to be tried by a particular tribunal. Mot. to Dismiss Indictment 27, 30, 33. Below, I address each of these arguments in turn.

### I.  Sixth Amendment

The Defendants assert that my decision to delay an investigation into potential jury taint until after a verdict was handed down violated their Sixth Amendment right to an impartial jury. Mot. to Dismiss Indictment 24. Specifically, according to the Defendants, the law of the First Circuit establishes that I had "the duty to launch an immediate investigation into Juror No. 13's claims of jury misconduct." Mot. to Dismiss Indictment 22. The Government concedes that, under First Circuit precedent, an investigation into an allegation of juror misconduct that arises during

---

[6] The Defendants' Motion is styled as a motion to dismiss the indictment on Fifth Amendment grounds, but I read it as making both Fifth *and* Sixth Amendment-based arguments for dismissal. *See, e.g.*, Def. Andre Muller's Mot. to Dismiss the Indictment with Prejudice ("**Mot. to Dismiss Indictment**") 24 (ECF No. 407) ("The court's decision to delay the investigation into Juror No. 13's allegations of jury bias deprived the defendants of their Sixth Amendment right to be tried by an impartial jury—the jury that they [ ] helped select.").

8

deliberations should "ideally[ ] take place prior to verdict," but it argues that my approach was nonetheless reasonable given the lack of consensus among the two Defendants about whether to immediately suspend deliberations or investigate the misconduct only in the event of any conviction. Government's Resp. in Opp'n to Andre Muller's Mot. to Dismiss the Indictment with Prejudice 13–14 (ECF No. 413).

The First Circuit has apparently never directly addressed whether a pre-verdict allegation of jury misconduct requires the immediate suspension of jury deliberations, though it has held that, "[w]here . . . a colorable claim of jury taint surfaces during jury deliberations, the trial court has a duty to investigate the allegation *promptly*." *United States v. Bradshaw*, 281 F.3d 278, 289 (1st Cir. 2002) (emphasis added). "The purpose of that inquiry is twofold: to ascertain whether some taint-producing event actually occurred, and if so, to assess the magnitude of the event and the extent of any resultant prejudice." *Id.* "If such an event is present and the potential for prejudice exists, 'the court must then consider the extent to which prophylactic measures (such as the discharge of particular jurors or the pronouncement of curative instructions) will suffice to alleviate that prejudice.' " *United States v. Bristol-Martir*, 570 F.3d 29, 42 (1st Cir. 2009) (quoting *Bradshaw*, 281 F.3d at 289).

The First Circuit has not had the opportunity to define the term "promptly," but the fact that the process is meant to take into consideration "prophylactic measures" suggests that the investigation should be done at a point when such measures could cure any prejudice resulting from the taint—that is, before the

verdict.⁷ *But see* J. of First Cir. 2 ("When the jury returned guilty verdicts against both defendants, the district court *promptly* investigated . . . ." (emphasis added)). On the other hand, the First Circuit also emphasizes that the trial court has "wide discretion to fashion an appropriate procedure" in the face of a claim of juror misconduct, *Bristol-Martir*, 570 F.3d at 42, and that, "[b]ecause claims of jury taint are almost always case-specific, the district court takes responsibility for appropriately calibrating its inquiry to the circumstances presented." *United States v. French*, 977 F.3d 114, 122 (1st Cir. 2020) (internal quotation marks and citation omitted).

In this case I did not initiate the investigation until *after* the jury had returned a verdict, and thus after the point at which I could have cured any taint. I also note however, that my decision was complicated by the circumstances presented— including my concern that suspending jury deliberations and immediately conducting an investigation would create its own set of problems, such as an increased risk of the

---

⁷ The Defendants make this argument coherently now, but they did not do so at the time it could have influenced my decision. Indeed, in the immediate aftermath of Juror 13's text messages, even as he argued for a mistrial or immediate investigation, counsel for Defendant Muller did not raise the possibility that a pre-verdict investigation might be able to *cure* any jury taint. Counsel for Defendant Muller did state his objection to "the timing" of a post-verdict investigation, but his concern was that it was easier to get a mistrial before the verdict than win a motion for a new trial in the event of guilty verdicts, not that delaying the investigation was in and of itself procedurally inappropriate. *See* Tr. of Aug. 9 Conf. of Counsel 20:15–21:9. And counsel for Mr. Holland actually stated that he did *not* want to suspend deliberations and/or call a mistrial, though "at some point we need to explore [Juror 13's allegations] *in the event of guilty verdicts.*" Tr. of Aug. 9 Conf. of Counsel 26:17–26:19 (emphasis added). No party called my attention to *United States v. Bradshaw*, 281 F.3d 278 (1st Cir. 2002), or *United States v. Bristol-Martir*, 570 F.3d 29 (1st Cir. 2009). Of course, I do not fault the parties for that oversight—given the timing of Juror 13's text messages, all parties, including myself, had to approach these tough questions with just minutes of research and preparation. Hindsight is, as always, 20/20.

10

jurors being exposed to outside influences. *See* Tr. of Aug. 9 Conf. of Counsel 26:2–26:3.

Ultimately, I need not determine whether my investigation was marred by procedural shortcomings. Even if my decision not to suspend jury deliberations violated the Defendants' Sixth Amendment right to an impartial jury, "[t]he remedy for such a violation is a retrial." J. of First Cir. 2 (citing *Bristol-Martir*, 570 F.3d at 45); *see also, e.g.*, *United States v. Casellas-Toro*, 807 F.3d 380, 390, 392 (1st Cir. 2015) (noting that "retrial" was an appropriate next step after it found the district court abused its discretion, and violated the defendant's right to an impartial jury, in denying a motion for change of venue); *United States v. Gaston-Brito*, 64 F.3d 11, 13–14 (1st Cir. 1995) (remanding case for a new trial after district court failed to conduct a sufficient inquiry into juror misconduct); *United States v. Perrotta*, 553 F.2d 247, 251 (1st Cir. 1977) (remanding for new trial where district court failed to inquire into prejudicial publicity). The Defendants have already obtained a new trial, which is scheduled to begin next week, and they cite no cases to support the proposition that dismissal of the indictment is an appropriate remedy in the face of this type of Sixth Amendment violation. As such, the Defendants' request to dismiss the indictment on Sixth Amendment grounds is denied.

## II.     Fifth Amendment

In addition to their Sixth Amendment argument, the Defendants assert, for the first time, that my failure, upon receipt of Juror 13's text messages, to immediately suspend jury deliberations, initiate an investigation, and attempt to remediate any potential jury taint constituted a violation of their Fifth Amendment

11

right to be tried by a particular tribunal, thus barring reprosecution on double jeopardy grounds.[8] Mot. to Dismiss Indictment 30, 34.

The Double Jeopardy Clause of the Fifth Amendment ensures that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. This provision "provides 'a triumvirate of safeguards: It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.' " *United States v. Garske*, 939 F.3d 321, 328 (1st Cir. 2019) (quoting *United States v. Ortiz-Alarcon*, 917 F.2d 651, 653 (1st Cir. 1990)). "[T]he policy underlying th[e double jeopardy] provision 'is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.' " *United States v. Jorn*, 400 U.S. 470, 479 (1971) (quoting *Green v. United States*, 355 U.S. 184, 187–88 (1957)). "As a part of this protection against multiple prosecutions, the Double Jeopardy Clause affords a criminal defendant a 'valued right to have his trial completed by a particular tribunal.' " *Oregon v. Kennedy*, 456 U.S. 667, 671 (1982) (quoting *Wade v. Hunter*, 336 U.S. 684, 689 (1949)); *see also Garske*, 939 F.3d at 328 (noting that the Double

---

[8] The Defendants also argue that their claims against reprosecution are not waived. Mot. to Dismiss Indictment 15. I presume, without actually deciding, that the Defendants' claims are not waived.

12

Jeopardy Clause reflects "the defendant's prized right to have his trial, once under way, completed by a particular trier" (quoting *United States v. Toribio-Lugo*, 376 F.3d 33, 37 (1st Cir. 2004))).

The Defendants argue that my decision not to suspend deliberations resulted in a deprivation of their Fifth Amendment right to be tried by a particular tribunal. Mot. to Dismiss Indictment 30. The cases cited by the Defendants for this premise, however, concern manifestly different situations—those where a mistrial was granted *over a defendant's objection* and *prior* to the jury reaching a verdict. In *United States v. Jorn*, 400 U.S. 470 (1971), for example, the Supreme Court held that "where the judge, acting without the defendant's consent, aborts the proceeding, the defendant has been deprived of his valued right to have his trial completed by a particular tribunal." 400 U.S. at 484 (internal quotation marks omitted); *see also United States v. Lara-Ramirez*, 519 F.3d 76, 89 (1st Cir. 2008) (holding that a defendant's Fifth Amendment right to trial by a particular tribunal was violated when court prematurely declared mistrial over objection of defendant). Similarly, in *Oregon v. Kennedy*, 456 U.S. 667 (1982), the Supreme Court held that a defendant who successfully moves for a mistrial prior to a verdict, but who is "goad[ed]" into doing so, does not lose the right to "raise the bar of double jeopardy to a second trial." 456 U.S. at 676.

Here, by contrast, I did not grant a mistrial against the Defendants' wishes. Instead, I decided, against the wishes of Defendant Muller, not to call an immediate mistrial and to wait until after a verdict to carry out my investigation of alleged jury

13

misconduct.[9] Even if this decision was procedurally deficient, the Defendants point to no case, nor am I aware of one, where a trial court's decision *not* to suspend deliberations is found to be a violation of the Fifth Amendment. Rather, as noted above, the cases that do resemble this one have held that similar procedural deficiencies implicate the Sixth Amendment, and that a new trial, not dismissal of the indictment, is the appropriate remedy where a trial court's investigation of juror misconduct falls short. *See Bristol-Martir*, 570 F.3d at 45; *Casellas-Toro*, 807 F.3d at 392; *Gaston-Brito*, 64 F.3d at 13–14; *Perrotta*, 553 F.2d at 251. As such, I do not believe that dismissal of the indictment is appropriate here.

## CONCLUSION

For the reasons stated above, the Court **DENIES** the Defendants' Motion (ECF No. 407).

The Court intends to unseal this order, the Defendants' Motion, the Government's response (ECF No. 413), and the Defendants' reply (ECF No. 418). The Court intends to leave any exhibits to those filings sealed. Any objections to the unsealing of any of these documents should be filed within 7 days. If no objection is filed within 7 days, this order, the Motion, and related briefing will all be unsealed.

SO ORDERED.

/s/ Nancy Torresen

---

[9] Further, in deciding not to suspend deliberations in this case, I considered Defendant Holland's wish to proceed to a verdict with "the first jury and, perhaps, end the dispute then and there with an acquittal." *United States v. Jorn*, 400 U.S. 470, 484 (1971).

United States District Judge

Dated this 27th day of March, 2023.