## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Docket No. 1:19-cr-00109-NT |
| | ) |
| ANDRE MULLER and | ) |
| ROBERT HOLLAND, | ) |
| | ) |
| Defendants. | ) |

### ORDER ON THE DEFENDANTS' MOTION FOR A NEW TRIAL

Before me is Defendant Andre Muller's motion for a new trial (ECF No. 550), which Defendant Robert Holland joins. For the reasons stated below, the motion is **DENIED**.

### BACKGROUND

This case stems from a robbery of a drug dealer, Jordan Richard, on July 27, 2016 in Rangely, Maine, which ended in the death of one of the perpetrators. The robbery was committed by Hector Munoz and Michael Bokun, the man who died, and Jonathon Raymond was the getaway driver. On June 12, 2019, Defendants Andre Muller and Robert Holland were charged with conspiracy to interfere with commerce by robbery, a violation of the Hobbs Act, 18 U.S.C. § 1951(a), for their part in planning and executing the robbery. *See* Indictment (ECF No. 3).

There have been two trials in this case. The first trial, which was held in August of 2022, ended in guilty verdicts. However, I granted the Defendants' motion for a new trial after a juror comment demonstrating racial bias came to light. Order on Defs.' Mot. for New Trial 17 (ECF No. 349).

The case was retried in November of 2023 and ended in guilty verdicts for both Defendants. On January 3, 2024, the Defendants filed a motion for a new trial. Def. Andre Muller's Mot. for New Trial ("**Mot. for New Trial**") (ECF No. 550).

## LEGAL STANDARD

The Defendants move for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. Under Rule 33, a "court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "Motions for a new trial are directed to the broad discretion of the trial judge, who may weigh the evidence and evaluate the credibility of witnesses in considering such a motion." *United States v. Wilkerson*, 251 F.3d 273, 278 (1st Cir. 2001) (quoting *United States v. Indelicato*, 611 F.2d 376, 387 (1st Cir. 1979)). "However, 'the remedy of a new trial is sparingly used, and then only where there would be a miscarriage of justice and where the evidence preponderates heavily against the verdict.' " *Id.* (quoting *Indelicato*, 611 F.2d at 387).

"[T]he Court may evaluate 'whether its evidentiary rulings at trial were correct.' " *United States v. Deschambault*, No. 2:19-cr-00187-JAW, 2023 WL 4974003, at *6 (D. Me. Aug. 3, 2023) (quoting *United States v. DiMasi,* 810 F. Supp. 2d 347, 362 (D. Mass. 2011)). "[A] new trial is justified only if an error concerning the admission of evidence was made and the error was not 'harmless.' " *DiMasi*, 810 F. Supp. 2d at 362 (quoting *Wilkerson*, 251 F.3d at 280).

## DISCUSSION

The Defendants advance eight grounds for a new trial, which I address in turn.

## I.  **Grounds 1–3: "Perjured" Testimony**

The Defendants allege that Munoz testified falsely when he said that he and Bokun entered Richard's house without any weapons. According to the Defendants, this was the first time they became aware that Munoz would say that he did not have weapons upon entering the house, which amounts to a *Brady* violation and a colorable claim that the Government knowingly used perjured testimony. Mot. for New Trial 5. The Defendants argue that this was sufficient to undermine the confidence in the outcome of the trial. Mot. for New Trial 5.

Under *Brady v. Maryland*, 373 U.S. 83 (1963), "the government offends due process if it causes prejudice to the defendant[s] by 'either willfully or inadvertently' suppressing 'exculpatory or impeaching' evidence in its custody or control that is 'favorable to the accused.' " *United States v. Peake*, 874 F.3d 65, 69 (1st Cir. 2017) (quoting *United States v. Connolly*, 504 F.3d 206, 212 (1st Cir. 2007)). *Brady* violations can form the basis of a motion for a new trial. *See id.* Defendants who file new trial motions based on *Brady* must show: (1) that the evidence was unknown or unavailable to them at trial; (2) that the failure to discover the evidence did not result from a lack of diligence; (3) that the evidence was material and not simply cumulative or impeaching; and (4) a reasonable probability that, had the evidence been timely disclosed, the proceeding would have had a different result. *Id.* This standard also applies to new trial motions based on a colorable claim that the Government knowingly used perjured testimony. *See Connolly*, 504 F.3d at 212; *United States v. McCurdy*, 825 F. Supp. 2d 335, 349 (D. Me. 2011).

The Defendants highlight the following section of testimony:

> Q: What happened when you entered the house?
> A: We got into a big fight.
> Q: Okay. When you say "a big fight," what happened?
> A: We started fighting with the owner of the house and the fight led into the bedroom.
> Q: Were any weapons used at this point?
> A: We didn't have any weapons, but a – the fighting went into the bedroom and Red got shot.

Trial Tr. Day 3 47:13–47:20 (ECF No. 542). They argue that this was the first time they became aware that Munoz would testify he did not have any weapons upon entering the house, which was impeachment evidence. Mot. for New Trial 5.

The Government demurs and offers evidence to the contrary. Gov't Resp. to Def. Andre Muller's Mot. for New Trial ("**Gov't Resp.**") 6–7 (ECF No. 569). First, on October 21, 2019, Assistant United States Attorney Raphaelle Silver conducted a proffer interview of Munoz. Gov't Resp. Ex. 1, at 1 (ECF No. 570-1). The report states that "Munoz stated that he did not have any weapons of any type on him and once inside, he got into a physical confrontation with one of the male subjects and was stabbed in the stomach." Gov't Resp. Ex. 1, at 3. This report was provided to Mr. Muller's counsel in early March of 2022, Gov't Resp. Ex. 3, at 1, 24 (ECF No. 570-3), and it appears to have been provided to Mr. Holland's counsel on April 1, 2022, *see* Gov't Resp. Ex. 4, at 2 (ECF No. 570-4).

On March 29, 2022, Government attorneys and agents met again with Munoz and his attorney. Gov't Resp. Ex. 2, at 1 (ECF No. 570-2). The interview summary states that "Hector said that he and Bokun approached the door then Bokun burst in, so he followed behind. Hector said that they didn't have any weapons . . . ." Gov't

4

Resp. Ex. 2, at 3. The Government provided the summary to Mr. Holland's counsel and Mr. Muller's counsel on April 1, 2022. Gov't's Resp. Ex. 5, at 1 (ECF No. 570-5).

The Defendants do not offer anything to counter these facts and do not even mention the Government's exhibits. Instead, they insist that if Munoz had previously testified that he and Bokun did not bring weapons "there would be notes, memoranda or other materials memorializing this anticipated testimony that was not turned over to the Defense." Def. Andre Muller's Reply to Gov't's Opp'n to His Mot. for New Trial 3 (ECF No. 578). Because the Government has offered unrefuted proof that it did provide interview summaries, the Defendants have failed to meet the first and second elements of the test—unavailability and due diligence. Munoz's testimony about weapons cannot be the basis for a new trial.

## II.   Ground 4: The Court's Evidentiary Rulings

The Defendants take issue with three of my evidentiary rulings at trial: (1) admitting coconspirator statements under Rule 801(d)(2)(E) of the Federal Rules of Evidence; (2) admitting evidence of the Defendants' prior drug dealing, and (3) admitting proof of Michael Bokun's death. Mot. for New Trial 6–8.

### A.   Coconspirator Statements

The Defendants argue that I erred by admitting coconspirator statements because the evidence showed that there was not a single conspiracy. Rather, the Defendants contend that there was an agreement to come to Maine to "party" between Mr. Muller, Mr. Holland, Munoz, Raymond, and Bokun, and a separate agreement to rob Richard involving only Munoz, Raymond, and Bokun. Mot. for New Trial 6.

The Federal Rules of Evidence generally prohibit the admission of hearsay, defined as an out-of-court "statement" offered "to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c), 802. Rule 801(d)(2)(E) excludes statements of a defendant's coconspirator made "during and in furtherance of the conspiracy" from the definition of hearsay. The bar on the admission of hearsay thus does not apply to such statements, so they "may be considered for the truth of the matter asserted." *United States v. Ramos-Baez*, 86 F.4th 28, 71 (1st Cir. 2023).

A coconspirator statement may be admitted as non-hearsay if it satisfies the requirements in *United States v. Petrozziello*, 548 F.2d 20 (1st Cir. 1977). Under *Petrozziello*, the party seeking admission of a "a coconspirator statement must establish by a preponderance of the evidence that the declarant and the defendant were members of the same conspiracy at the time that the statement was made and that the statement was made 'in furtherance' of the conspiracy." *Ramos-Baez*, 86 F.4th at 72. In making that determination, the Court may consider hearsay including the challenged statement itself. *United States v. Mitchell*, 596 F.3d 18, 23 (1st Cir. 2010); *United States v. Portela*, 167 F.3d 687, 703 (1st Cir. 1999). However, the showing can only be made "if there is corroboration in the form of extrinsic evidence beyond the statement itself of the declarant's involvement in the conspiracy." *Ramos-Baez*, 86 F.4th at 72.

During the presentation of evidence, I conditionally admitted the alleged coconspirator statements. Following the close of evidence, I gave the parties an opportunity to be heard on the *Petrozziello* issue, and I made my final determination

6

admitting the statements relying on the testimony of Raymond and Munoz that Mr. Holland had the idea of robbing Richard in the first place and Mr. Muller recruited the people to commit the crime and brought them to Maine. *See* Trial Tr. Day 3 146:8–150:23. This testimony was corroborated by photographic evidence that Mr. Muller traveled from New York to Maine with Munoz and Bokun. In addition, the Government introduced evidence that both men lied about their identities when trying to leave the state after the robbery. This evidence showed that the declarants and the Defendants were members of the same conspiracy to rob Richard at the time that the statements were made and that the statements were made in furtherance of the conspiracy.

In their motion for a new trial, the Defendants essentially rehash the arguments they made regarding *Petrozziello* at trial. *Compare* Trial Tr. Day 3 146:12–148:14, *with* Mot. for New Trial 6–7. Having seen nothing that would make me reconsider my reasoning during trial, I stand by my ruling.

### B.  Prior Drug Dealing

The Defendants also take issue with my decision to admit evidence of their prior drug dealing pursuant to Federal Rule of Evidence 404(b) on the grounds that it only showed their propensity to commit crimes and irreparably prejudiced them. Mot. for New Trial 7. Under Rule 404(b), "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, the rule goes on to provide that such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan,

knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). In a conspiracy case, a permissible purpose is to help the jury understand the basis of the coconspirators' relationship of mutual trust. *United States v. Weadick*, 15 F.4th 1, 18 (1st Cir. 2021).

If prior bad act evidence has special relevance under Rule 404(b), the court then must consider whether the evidence should nevertheless be excluded under Rule 403. *United States v. Henry*, 848 F.3d 1, 8 (1st Cir. 2017). Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. Careful limiting instructions can sometimes "cure the prejudice that would otherwise render inappropriate the introduction of prior-bad-acts-evidence" if they "guide the jury's attention away from the forbidden propensity inference by clearly directing it toward the specific permissible relevance that the prior-bad-acts evidence has to the case." *United States v. García-Sierra*, 994 F.3d 17, 34 (1st Cir. 2021).

The Defendants filed a motion in limine to exclude evidence of their prior drug dealing, which I deferred ruling on until the evidence came up during the trial. Oral Order (ECF No. 514); Trial Tr. Day 1 10:2–10:7. At trial, the Government sought to inquire of Jennifer Raymond, Jonathan Raymond's sister, about her prior drug dealing with Mr. Holland. Trial Tr. Day 1 235:14–235:21. I conditionally admitted the evidence and stated on the record:

> I'm going to admit the evidence of any -- and allow you to inquire of prior drug dealing relationship she had with Mr. Holland. The reason I am doing it is because the government has asserted a special relevance to the evidence. And I agree with it, that it's probative of the relationship

> between them and why they would discuss things in front of her. It shows their mutual trust. She didn't rat him out the first time. He can talk to her and in front of her. And I think that's probative and it's on balance, not unfairly prejudicial. So that's the 404(b) ruling.

Trial Tr. Day 1 236:3–236:13. When Jennifer Raymond testified about Mr. Holland supplying her with drugs, I instructed the jury that they could "consider the evidence solely to assess the mutual trust relationship that Ms. Raymond may have had with Mr. Holland. You cannot use it as a propensity that shows that Mr. Holland has a propensity to commit the crime with which he's charged. Only to show the relationship between Mr. Holland and Ms. Raymond." Trial Tr. Day 1 245:12–245:17. The jurors were given a similar instruction as part of their final jury instructions.

Here, too, the Defendants repeat the arguments made in their motion in limine and during trial. *Compare* Def. Andre Muller's Motions *in Limine* ("**MIL**") 3 (ECF No. 496), *and* Trial Tr. Day 1 232:8–237:7, *with* Mot. for New Trial 7. Seeing no reason to reverse my ruling on this issue, I reject the Defendants' argument.

### C.   Proof of Michael Bokun's Death

As a final challenge to the evidentiary rulings, the Defendants call out the admission of evidence that Bokun died during the robbery. Mot. for New Trial 8. The Defendants claim that it was irrelevant, had no probative value, and that the prejudice to them grossly outweighed any probative value. Mot. for New Trial 8.

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Even if evidence is relevant, it may still

be excluded if its probative value is substantially outweighed by unfair prejudice.
Fed. R. Evid. 403.

> At the trial, I admitted the evidence of Bokun's death because
>
> I found last time, and will find again here today, that the death of
> Michael Bokun is relevant. It is not more prejudicial than probative, and
> I would advise the government, as I did last time, please don't belabor
> that or you will run afoul of the balance of prejudice against probative.

Trial Tr. Day 1 13:16–13:21. At the first trial, after reviewing the photos of the crime
scene I found that they were not so gory as to be overly prejudicial. First Trial Tr.
Day 1 58:17–60:2 (ECF No. 364). At the second trial, I confirmed the Government
planned to use the same exhibits, and I found that the photographs of Bokun were
not too gory to be shown. Muller Trial Tr. Day 1 92:23–92:24.

Once again, the Defendants have not presented any argument to cause me to
question my ruling on the evidence of Bokun's death that I had not already
considered. *Compare* MIL 8–9, First Trial Tr. Day 1 54:16–60:2, *and* Trial Tr. Day 1
13:14–14:2, *with* Mot. for New Trial 8. I do not grant a new trial on this basis.

## III.  Ground 5: The Verdict Form

The Defendants next challenge my decision not to give a special verdict form
as they requested because "the jury had the right to know they could have found that
the agreement between and among Muller and Holland and others to 'party' in Maine
was separate and distinct from the conspiracy among Raymond, Bokun, and Munoz
to go to Richard's home in the early morning of July 28, 2023 [*sic*]." Mot. for New Trial
8. Special verdict forms are generally disfavored in criminal cases. *See McClinton v.
United States*, 143 S. Ct. 2400, 2406 (2023) (Alito, J., concurring); *United States v.*

*Moffett*, 53 F.4th 679, 693 (1st Cir. 2022). In this case, the Defendants requested a special verdict form; however, that request simply asked "that the Court submit a special verdict form to the jury" without more, and the Defendants did not raise the issue further at trial.[1] Def. Andre Muller's Request for Special Verdict Form (ECF No. 518).

In any event, the verdict form did what the Defendants are now requesting. Each Defendant's verdict form asked whether the jury found that Defendant guilty "*of the conspiracy charged in Count One*." Muller Verdict Form (ECF No. 527); Holland Verdict Form (ECF No. 528). The forms made clear that the jury had to decide each Defendant's guilt of the conspiracy in the Indictment, not some other conspiracy. I do not view this ground as a basis for a new trial.

## IV. Ground 6: "an All-White Venire; an All-White Jury"

The Defendants next argue that the venire and jury were all-white, which was a concern because the Defendants are Black, "their first trial was adjourned to litigate

---

[1]      On November 15, 2023, Mr. Muller filed a request for a special verdict form that stated in full: "The defendant, Andre Muller, by his counsel Randy Zelin, Esq. (admitted *pro hac vice*), in response to the government's proposed jury verdict form (ECF Document no. 517) respectfully requests that the Court submit a special verdict form to the jury." Def. Andre Muller's Request for Special Verdict Form (ECF No. 518). On November 16, 2023, after asking if the parties had objections to the charge as given, I explained that I planned to split the verdict forms so that there was one for each Defendant. Trial Tr. Day 3 168:11–168:24. Mr. Muller's verdict form read:

Count One – Conspiracy

1. We, the Jury, find the Defendant Andre Muller [Not Guilty/Guilty] of the conspiracy charged in Count One.

Jury Verdict Form (ECF No. 527). Mr. Holland's verdict form contained the same language with his name. Jury Verdict Form (ECF No. 528).

the underrepresentation of Blacks in the venire,"[2] and their first trial was tainted with racial animus. Mot. for New Trial 9. The Defendants state, "Attorney Zelin distinctly remembers noting on the record that other than the defendants, there were no Blacks in the courtroom."[3] Mot. for New Trial 9 n.7.

The Sixth Amendment guarantees the right to have a jury drawn from sources reflecting a fair cross section of the community. *See* U.S. Const. amend. VI; *Taylor v. Louisiana*, 419 U.S. 522, 527 (1975). To establish a violation of the fair cross section requirement,

> the challenging party must establish: "(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process."

*United States v. González-Vélez*, 466 F.3d 27, 39 (1st Cir. 2006) (quoting *United States v. Benjamin*, 252 F.3d 1, 12 (1st Cir. 2001)); *see Duren v. Missouri*, 439 U.S. 357, 364 (1979).

Defense counsel's visual scan of the racial makeup of the jury venire cannot form the basis for a new trial on Sixth Amendment grounds. *See United States v. Weekes*, 611 F.3d 68, 70 (1st Cir. 2010). In addition, the Defendants admit they do not

---

[2]     The first trial was delayed so the parties could conduct discovery on the issue. *See* Speedy Trial Order (ECF No. 200). I then denied the Defendants' motion on this basis because I found no constitutional or statutory fault in the jury selection process or the trial's venue. Order on Def. Andre Muller's Mot. to Dismiss Indictment or for Change of Venue (ECF No. 267).

[3]     The record reflects that during jury selection Mr. Muller's counsel actually said: "I just would like the record to reflect that there is not a single person of color in this entire room other than our clients." Jury Selection Tr. 46:24–47:1 (ECF No. 549). The record suggests that this assertion may not have been accurate. *See* Jury Selection Tr. 78:5–83:14.

have any proof that Black people were systematically excluded from the jury selection process or that their underrepresentation in the venire was disproportionate to their representation in the community. Mot. for New Trial 9. Given the Defendants' failure to make the requisite showing, I cannot grant their motion on this ground.

## V.   Ground 7: The Delay Between Jury Selection and Opening Statements

The Defendants next contend that it was an error to start the trial one week after jury selection because that gave the jury a week to learn about the case extrajudicially. Mot. for New Trial 10–11. The Defendants offer no case granting a motion for a new trial on this ground. Once the jury was selected, Magistrate Judge Nivison clearly explained to the jurors their obligation not to discuss the case with anyone, do independent research, watch or read any media coverage of the trial, or post about being a juror on social media. Jury Selection Tr. 102:13–104:13 (ECF No. 549). It is presumed that, absent any evidence to the contrary, jurors heed a district court's instructions. *See, e.g.*, *Samia v. United States*, 599 U.S. 635, 646 (2023); *United States v. Padilla-Galarza*, 990 F.3d 60, 81 (1st Cir. 2021); *United States v. Gallardo*, 497 F.3d 727, 736 (7th Cir. 2007); *United States v. Kaufman*, No. 04–40141–01, 2011 WL 3299937, at *4 (D. Kan. Aug. 1, 2011).

Additionally, the delay between jury selection and the start of trial resulted from an effort to accommodate defense counsel.[4] It was *Mr. Muller's counsel* who

---

[4]     Trial was scheduled to begin immediately after jury selection on November 7, 2023, so either November 8 or 9, 2023 depending on how long it took to select a jury (ECF No. 467). On October 26, 2023, Mr. Muller's counsel filed a motion to push back the start time of the trial day on November 13, 2023, to 2:00 p.m. because he wanted to attend a wedding in Pennsylvania on November 12 and he could not find a flight to Bangor in time for the usual start time of trial on November 13. Mot. for Continuance of Trial 1 (ECF No. 478). The Government proposed starting the week of November 13 because having effectively a four-day weekend (the Veteran's Day holiday on November 10 and Mr.

suggested starting the trial at 2 p.m. on the Monday following jury selection as a workable option. Def. Muller's Reply Concerning His Mot. for Continuance of Trial 2 (ECF No. 480).

## VI.    Ground 8: Challenges Concerning the Jury's Deliberations

The Defendants advance several arguments connected to the jury's deliberations. First, they argue that I should have declared a mistrial when the jury reported "deadlock" on Friday, November 17, 2023, rather than sending them home for the weekend. Mot. for New Trial 11, 13. Second, they argue that I should have questioned the jury upon their return on Monday about whether any of them discussed the case, did independent research, or otherwise learned anything about the case over the weekend. *See* Mot. for New Trial 11; Def. Andre Muller's Request That Ct. Voir Dire Jurors on Whether They Followed the Ct.'s Instructions Given at the Close of the Trial Day Friday November 17, 2023 ("**Voir Dire Request**") 2 (ECF No. 523). Third, the Defendants claim that "at least one juror could not bring himself to utter the word 'guilty.' " Mot. for New Trial 12. Fourth, the Defendants argue that the jury should have been told it was alright for them to be unable to agree. Mot. for New Trial 12.

---

Zelin's requested very late start on November 13) in the middle of a four-day trial would be too disjointed. Gov't's Resp. to Mot. to Continue Trial (ECF No. 479). Mr. Muller's counsel replied that the Government's request to start the trial on November 13 caused an additional problem because he taught a class on Friday mornings between 9 a.m. and 11 a.m., which would conflict with the anticipated trial schedule for November 17. Def. Muller's Reply Concerning His Mot. for Continuance of Trial ("**Trial Date Reply**") 1 (ECF No. 480). He suggested *either:* (1) adopting the Government's suggestion and starting the trial on November 13 at 2 p.m. but starting at noon on November 17 so he could teach his class; or (2) granting his request to start the trial day on November 13 at 2 p.m. but starting the trial following jury selection. Trial Date Reply 2.

14

Jury deliberations transpired as follows: I committed the case to the jury for deliberation at 3:15 p.m. on Thursday, November 16, 2023. Minute Entry ("**Jury Verdict Entry**") 1 (ECF No. 524). At 6:21 p.m., I received a note from the jury asking why the case was coming to trial so long after the robbery and indictment. Trial Tr. Day 3 213:14–213:19. At 7:34 p.m., I received another note asking for copies of transcripts of the testimony of five witnesses. Trial Tr. Day 3 223:3–223:8. I returned a note asking if the jury could specify what they were looking for, and the jury responded with a note asking about a topic during Munoz's testimony. Trial Tr. Day 3 227:20–228:10. I sent the jury home for the evening at 8:35 p.m. after instructing them not to speak about the case with anyone. Trial Tr. Day 3 230:14–231:13. They were ordered to resume deliberations the next day.

On the second day of deliberations, Friday, November 17, the jury sent another note, time stamped 11:18 a.m. Trial Tr. Day 4 6:5–6:7 (ECF No. 543). The note read, "Good morning, Judge. Unfortunately, we cannot come to a unanimous decision in the deliberations. Will you please advise us of our next steps?" Trial Tr. Day 4 6:7–6:9. With the parties' agreement, I sent a letter advising the jury to review the final jury instruction section on "Reaching Agreement."[5] Trial Tr. Day 4 6:12–7:13.

---

[5]   That section provided:

Each of you must decide the case for yourself, but you should do so only after considering all the evidence, discussing it fully with the other jurors, and listening to the views of the other jurors. Do not be afraid to change your opinion if you think you are wrong. But do not come to a decision simply because other jurors think it is right.

This case has taken time and effort to prepare and try. There is no reason to think it could be better tried or that another jury is better qualified to decide it. It is important therefore that you reach a verdict if you can do so conscientiously. If it looks at some point as if you may have difficulty in reaching a unanimous verdict, and if the greater number of you are agreed on a verdict, the jurors in both the majority and the minority

That afternoon, the jury sent a note, timestamped 2:13 p.m., stating, "Dear Judge, we have reviewed the evidence presented in-depth and are still at an impasse. We feel we have exhausted all possible avenues of coming to an agreement." Trial Tr. Day 4 8:1–8:5. The parties agreed that I should read the *Allen* charge. Trial Tr. Day 4 8:7–9:5. I made a slight modification to the charge over the Government's objection, Trial Tr. Day 4 9:6–12:14, and delivered the *Allen* charge to the jury as follows:

> In trials absolute certainty can neither be expected nor attained. You should consider that you are selected in the same manner and from the same source as any future jury would be selected. There's no reason to suppose that this case would ever be submitted to 12 men and women more intelligent, more impartial, or more competent to decide it than you or that more or clearer evidence would be produced in the future. Thus, it is your duty to decide the case if you can conscientiously do so without violence to your individual judgment.
>
> . . . .
>
> The verdict to which a juror agrees must, of course, be his or her own verdict, the result of his or her own convictions, and not a mere acquiescence in the conclusion of his or her fellow jurors. Yet, in order to bring 12 minds to a unanimous result, you must examine the questions submitted to you with an open mind and with proper regard for, and deference to the opinion of the other jurors.
>
> In conferring together you ought to pay proper respect to each other's opinions and you ought to listen with a mind open to being convinced by each other's arguments. Thus, where there is disagreement, jurors

should reexamine their positions to see whether they have given careful consideration and sufficient weight to the evidence that has favorably impressed the jurors who disagree with them. You should not hesitate to reconsider your views from time to time and to change them if you are persuaded that this is appropriate.

It is important that you attempt to return a verdict, but, of course, only if each of you can do so after having made your own conscientious determination. Do not surrender an honest conviction as to the weight and effect of the evidence simply to reach a verdict.

Trial Tr. Day 3 209:11–210:10.

favoring acquittal should consider whether a doubt in your own mind is a reasonable one even when it makes little or no impression upon the minds of the other equally honest and intelligent jurors who have heard the same evidence with the same degree of attention and with the same desire to arrive at the truth under the sanction of the same oath.

On the other hand, jurors favoring conviction . . . ought to seriously ask themselves whether they should trust the weight or sufficiency of the evidence if it has created reasonable doubt in the minds of other jurors. Not only should jurors in the minority re-examine their positions, but jurors in the majority should do so also, to see whether they have given careful consideration and sufficient weight to the evidence that has favorably impressed the persons in disagreement with them.

Burden of proof is a legal tool for helping you decide. The law imposes upon the prosecution a high burden of proof. The prosecution has the burden to establish each essential element of the offense, and to establish that essential element beyond a reasonable doubt. And if with respect to any element, you are left in reasonable doubt, the defendant is entitled to the benefit of such doubt and must be acquitted.

It is your duty to decide the case, if you can conscientiously do so without violence to your individual judgment. But if you cannot agree, it is your right to fail to agree.

I'm going to instruct you to go back and resume your deliberations. You are in recess again.

Trial Tr. Day 4 13:4–15:18.

At 5:15 p.m., I instructed the jury manager to go to the jury with menus and give them the option of ordering dinner and continuing to deliberate or coming back Monday morning. Trial Tr. Day 4 16:13–16:16. The jury responded that they were "still at an impasse" and "decided to take the offer of leaving for the day and returning on Monday." Trial Tr. Day 4 16:16–16:19. I explained this to the parties, said I planned to instruct the jury not to talk about the case over the weekend, and asked if the parties agreed with this course of action. Trial Tr. Day 4 16:22–17:2. Everyone

agreed. Trial Tr. Day 4 17:3–17:5. Before dismissing the jury for the weekend I reminded the jury of their oath to not speak to anyone about the case or do any research. Trial Tr. Day 4 18:10–18:15.

Over the weekend Mr. Muller filed a request that the Court conduct a voir dire to ask jurors if they discussed the case with anyone, did any independent research, or learned anything about the case from any source over the weekend. Voir Dire Request. Mr. Holland joined the Request. Trial Tr. Day 5 3:18–3:19 (ECF No. 544). I agreed with the Government that without evidence that someone had violated their oath, there was no basis to do a voir dire. Trial Tr. Day 5 5:8–5:12.

After approximately sixteen hours of deliberation, the jury returned a guilty verdict at 12:07 p.m. on Monday, November 20, 2023. Jury Verdict Entry 1. The Defendants requested polling the jury and all jury members answered in the affirmative.[6]

The Defendants first argue that I should have declared a mistrial on Friday because sending the jury home for the weekend before Thanksgiving after they "sen[t] out four notes on Friday" about being deadlocked set the stage for them to compromise too easily so that they could go home. Mot. for New Trial 13. To set the record straight, the jury sent three notes on Friday regarding their deliberations being at an impasse. First, at 11:18 a.m. they sent a note about being unable to reach a unanimous

---

[6]     In the Motion for New Trial, defense counsel asserts as a basis for relief "the inability of at least one juror to say 'guilty' during polling." Mot. for New Trial 1. Consistent with the Court's practice, each juror was asked whether the verdict was their verdict and each juror responded in the affirmative. *See* Trial Tr. Day 5 7:10–7:14. At no time was any juror required to say "guilty" during polling.

decision, to which I responded by instructing them to review the final jury instruction on reaching agreement. Second, at 2:13 p.m., the jury sent a letter stating that they were still at an impasse, following which the parties agreed that I should give an *Allen* charge. Third, around 5 p.m., after I instructed the jury manager to go to the jury with menus and give them the option of ordering dinner and continuing to deliberate that evening or coming back Monday morning, the jury responded with a note stating that they were "still at an impasse" and "decided to take the offer of leaving for the day and returning on Monday." Defense counsel did not voice any objection to dismissing the jury.

The jury did not indicate that further deliberations would be futile, and it was the jury that made the choice to start fresh on Monday. While their note said that they were at an "impasse," their decision to return Monday signaled that they thought further deliberations on the matter could be fruitful. It also bears repeating that the Defendants did not suggest a mistrial was appropriate or voice any objections to continuing deliberations. On this record, the Defendants cannot now show that the decision to continue deliberations prejudiced them.

Next, the Defendants challenge my denial of their request to voir dire the jurors when they returned on Monday. They offer a few cases stating that there are circumstances where inquiry into a jury's deliberations may be warranted despite concerns about intruding into jury deliberations. *See* Mot. for New Trial 12 (citing *United States v. Villar*, 586 F.3d 76 (1st Cir. 2009); *United States v. French*, 977 F.3d 114 (1st Cir. 2020), *United States v. Bristol-Mártir*, 570 F.3d 29 (1st Cir. 2009)). But

these cases all involved "non-frivolous suggestion[s]" of jury bias or taint. *See Bristol-Mártir*, 570 F.3d at 36; *Villar*, 586 F.3d at 79; *French*, 97 F.3d at 117–18. The Defendants did not offer any credible basis for believing that the jurors had violated their oath when I gave them an opportunity to be heard on their request on Monday, and they offer none now. Further, I reminded the jury on multiple occasions that they were not to do outside research or discuss the case with anyone, and jurors are presumed to follow their oath and a court's instructions. *See, e.g.*, *Padilla-Galarza*, 990 F.3d at 81; *Peña-Rodriguez v. Colorado*, 580 U.S. 206, 224 (2017). The Defendants have offered no authority supporting their view that I should presume differently simply because deliberations were split over a weekend.

Lastly, the Defendants argue that "[t]he Court did not instruct the jury that they had the right to report that they could not agree on a verdict." Mot. for New Trial 12. Not so. My final jury instructions stated that the jury should only return a verdict if each of them could do so after having made their own conscientious determination and that they must not surrender an honest conviction about the evidence simply to reach a verdict. I instructed the jury to review that section of the instructions[7] after receiving their first note stating they could not reach agreement. The modified *Allen* charge contained similar language that "it is your duty to decide the case *if you can conscientiously do so without violence to your individual judgment.*" Trial Tr. Day 4 13:11–13:13; 15:13–15:15 (emphasis added). The charge went on: "The verdict to which a juror agrees must, of course, be his or her own verdict, the result of his or her

---

[7]     The jury was given a written copy of the final jury instructions.

own convictions, and not a mere acquiescence in the conclusion of his or her fellow jurors." Trial Tr. Day 4 14:2–14:5. And, despite what the Defendants now claim, I told the jury, "If you cannot agree, it is your right to fail to agree." Trial Tr. Day 4 15:15–15:16. This is not grounds for a new trial.

The Defendants invite me to consider all the grounds together and to consider their motion in light of the evidence of bias in the first trial. *See* Mot. for New Trial 4 n.3, 9–11. I have done so, and still find that the Defendants have failed to carry their burden for a new trial.

## CONCLUSION

For the reasons stated above, the Court **DENIES** the Defendants' motion for a new trial (ECF No. 550).

SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 24th day of April, 2024.

21